**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-22350-RAR**

**SHEBAH T. CARFAGNA**,

    Plaintiff,

v.

**FISHER ISLAND CLUB, INC.**,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**THIS CAUSE** comes before the Court upon Defendant Fisher Island Club, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion to Compel Arbitration and Stay the Action, [ECF No. 23], filed on September 9, 2024.[1] While filed jointly, the Motion advances two distinct dispositions of this action that must be addressed separately. Accordingly, the Court must first decide which, if any, causes of action should be dismissed; then, the Court must determine whether any surviving causes of action should be referred to arbitration. Having considered Defendant's Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration and Stay the Action is **GRANTED IN PART AND DENIED IN PART**. The Court grants the Motion to Dismiss at to Counts I and II of the Amended Complaint but denies the Motion to Dismiss as to Counts III and IV for the reasons stated herein. Further, the Court grants the Motion to Compel Arbitration only as to Count III of the Amended Complaint.

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Pl.'s Resp. in Opp'n [ECF No. 24]; Def.'s Reply [ECF No. 27].

## BACKGROUND

### I. Factual Background

Plaintiff, Shebah Carfagna, is a fitness instructor and the sole owner and president of Panache Trading Company *d/b/a* Panache Fitness. Am. Compl. ¶¶ 13–16. Defendant, Fisher Island Club, Inc., is an exclusive residential community. Am. Compl. ¶ 15. Plaintiff worked as a fitness instructor at Defendant's facilities for fourteen years. Am. Compl. ¶ 17. Defendant hired Plaintiff through Panache Fitness in 2010, when Defendant and Panache Fitness executed an independent contractor agreement ("Original Contract"). Am. Compl. ¶¶ 16–17. Plaintiff signed the Original Contract in her representative capacity as "President" of Panache Fitness. *See* Mot. Dismiss, Ex. B at 4; Mot. Dismiss at 3. In 2021, Panache Fitness and Defendant executed a new independent contractor agreement ("Panache Contract"), which Plaintiff also signed in her representative capacity.[2] *See* Mot. Dismiss, Ex. A at 7. Both the Original Contract and the Panache Contract provide that neither Panache Fitness nor any agent or employee of Panache Fitness is an employee of Defendant. Mot. Dismiss, Ex. B at ¶ 4; Mot. Dismiss, Ex. A at ¶ 1. The Panache Contract also contains an arbitration clause, providing that "[a]ny dispute or controversy arising out of or in connection with this Agreement shall be settled exclusively by binding arbitration in accordance with the rules of the American Arbitration Association." Mot. Dismiss, Ex. A at ¶ 22.

---

[2] Although referenced in her Amended Complaint, Plaintiff does not provide a copy of either contract. However, Defendant includes copies of both the Original Contract and the Panache Contract as exhibits attached to its Motion to Dismiss. A court may consider a document that is not attached to the complaint when the "plaintiff refers to [the] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *McDowell v. Gonzalez*, 424 F. Supp. 3d 1214, 1223 (S.D. Fla. 2019) (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)). Such is the case here. Accordingly, the Court will consider both the Original Contract and the Panache Contract.

## II. Racial Discrimination and Retaliation Allegations

Plaintiff alleges that she was the only black, female fitness instructor working at Defendant's facilities. Am. Compl. ¶¶ 1, 20. Plaintiff alleges that Defendant and its staff engaged in a pattern of racially motivated, discriminatory behavior, including: diverting fitness classes and clients from Plaintiff to white instructors, *id.* at ¶ 23; preventing Plaintiff from teaching classes by falsely claiming that she was unqualified, *id.* at ¶ 24; depriving Plaintiff of equipment needed to teach classes, *id.* at ¶ 28; intentionally withholding Plaintiff's earnings, *id.* at ¶ 30; and making defamatory comments about Plaintiff, *id.* at ¶¶ 31–33. Plaintiff alleges that she repeatedly complained about this behavior. Am. Compl. ¶¶ 30–34. On April 22, 2024, Defendant terminated Plaintiff's employment. Am. Compl. ¶ 38.

## III. Summary of Arguments

Plaintiff's First Amended Complaint, [ECF No. 21], alleges four 42 U.S.C. § 1981 violations: race discrimination against Plaintiff, individually (Count I); retaliation against Plaintiff, individually, for engaging in a protected activity (Count II); retaliation against Panache Fitness for engaging in a protected activity (Count III); and violation of Plaintiff's rights under the equal benefits clause of § 1981, individually (Count IV). However, the factual allegations illustrating discrimination and retaliation are not at issue. Instead, Defendant's Motion to Dismiss and Plaintiff's Response in Opposition dispute: (1) whether Defendant's Motion to Dismiss is properly dispensed with pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) whether Plaintiff is precluded from pursuing her § 1981 claims because she is not a party to the Panache Contract; and (3) whether Plaintiff's claims must be referred to arbitration.

## LEGAL STANDARD

As a threshold matter, this Court must determine whether to apply the legal standard associated with a Rule 12(b)(1) or Rule 12(b)(6) Motion to Dismiss. Defendant insists that the

Motion to Dismiss is governed by Rule 12(b)(1) because it attacks Plaintiff's standing to bring § 1981 claims.[3] Plaintiff argues that standing is not at issue because she does not rely on the Panache Contract to bring her claims and that the Motion is subsequently governed by Rule 12(b)(6). An attack on a plaintiff's standing is an attack on subject matter jurisdiction and the proper vehicle to challenge subject matter jurisdiction is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Fis v. Newrez, LLC*, No. 22-81364, 2022 WL 18034429, at *1 (S.D. Fla. Dec. 28, 2022). However, where the movant's jurisdictional challenge implicates an element of the plaintiff's underlying cause of action, then the court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981)). Essentially, this transforms a Rule 12(b)(1) Motion to Dismiss into a Rule 12(b)(6) Motion to Dismiss, affording the plaintiff greater deference. *Id.* ("This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides [] a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . .").

Such is the case here. Defendant argues that Plaintiff cannot establish standing to assert her § 1981 claims because she is not a party to the Panache Contract. *See* Mot. Dismiss at 8. However, this attack necessarily implicates the merits of Plaintiff's claims because § 1981 protects the equal right of persons to "make and enforce contracts," irrespective of race. 42 U.S.C. § 1981(b); *see* Mot. Dismiss at 8. Thus, what Defendant presents as a standing argument is, in

---

[3] Specifically, Defendant argues that Plaintiff is not a party to the Panache Contract since Plaintiff signed the contract in her representative capacity. *See* Mot. Dismiss at 8. Therefore, Defendant concludes that Plaintiff does not have a personal contract right that was violated or could be enforced after termination of the Panache Contract. *See* Mot. Dismiss at 11. Thus, since § 1981 protects the individual right to make and enforce contracts, Defendant reasons that Plaintiff does not have standing under § 1981 to enforce the Panache Contract. *See* Mot. Dismiss at 8–12.

actuality, contesting whether Plaintiff has any rights under the Panache Contract protected by § 1981. Accordingly, the Court will consider this Motion as a Rule 12(b)(6) Motion to Dismiss and afford Plaintiff's factual allegations a presumption of truth. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Nonetheless, for the purposes of the motion to dismiss, the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true.").

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted).

## **ANALYSIS**

Defendant argues that even if this Court evaluates the Motion to Dismiss according to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims should nevertheless be dismissed for failure to state a claim. *See* Mot. Dismiss at 15–16. In the alternative, Defendant argues that the causes of action that are not dismissed must be compelled to arbitration. *See* Mot.

Dismiss at 16–20. The Court considers these arguments to be separate motions and addresses them in turn.

## I. Defendant's Motion to Dismiss

Defendant argues that Plaintiff's Amended Complaint fails to state a claim because § 1981 claims must identify an impaired contractual relationship under which a plaintiff has rights. *See* Mot. Dismiss 15–16 (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006)). Defendant maintains that Plaintiff lacks contractual rights under the Panache Contract because Plaintiff signed the contract on behalf of Panache Fitness, not in her individual capacity. *See* Mot. Dismiss at 16. The Court agrees and grants the Motion to Dismiss as to Counts I and II of Plaintiff's Amended Complaint, which Plaintiff brings individually. However, Count III of the Amended Complaint is brought on behalf of Panache Fitness, which is a party to the Panache Contract; therefore, the Court denies the Motion to Dismiss as to Count III. Finally, the Court holds that the Motion to Dismiss is denied as to Count IV because Defendant has waived its argument.

### *(a) Counts I and II of the Amended Complaint are dismissed for failure to state a claim because Plaintiff is not a party to the Panache Contract.*

Defendant, relying almost exclusively on *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), argues that a corporate representative may not individually file a § 1981 action based on a contract the representative executed on the corporation's behalf. *See* Mot. Dismiss 15–16. In *Domino's*, McDonald was the sole owner and president of JWM Investments, Inc., ("JWM"). *Id.* at 472. JWM and Domino's Pizza, Inc. ("Domino's"), executed several contracts that McDonald signed on behalf of JWM. *Id.* Domino's later reneged on the contracts and McDonald sued in his individual capacity, alleging that Domino's breached the contracts based on racial animus and, as a result, McDonald suffered personal financial and emotional loss. *Id.* at 473–74.

On appeal, the Supreme Court held that McDonald's § 1981 claim failed because the contractual relationship McDonald identified as the basis of his claim was between JWM and Domino's, not McDonald and Domino's. *Id.* at 477. Further, the Supreme Court explicitly rejected McDonald's argument that because he "negotiated, signed, performed, and sought to enforce the contract" between his company and Domino's, the contract was really "his own." *Id.* Instead, the Supreme Court held that "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

Here, Plaintiff argues that Defendant discriminated against her by diverting clients to white fitness trainers, interfering with Plaintiff's ability to conduct fitness classes, and withholding wages. Am. Compl. ¶¶ 23–37. Moreover, Plaintiff argues that Defendant retaliated against her for complaining of this discrimination by terminating her employment. Am. Compl. ¶¶ 30–38. However, as in *Domino's*, the genesis of Plaintiff's relationship with Defendant was the contract between Plaintiff's *business* and Defendant—not between Plaintiff and Defendant. Am. Compl. ¶ 16; Mot. Dismiss at 3; Mot. Dismiss, Ex. A. Furthermore, while Plaintiff contends, as in *Domino's*, that she personally "negotiated, signed, performed, and sought to enforce the contract[,]" Plaintiff took these actions in her representative capacity. Mot. Dismiss, Ex. A at 7. As such, Plaintiff cannot point to an individual contractual right that Defendant violated and Counts I and II of Plaintiff's Amended Complaint must be dismissed.

To avoid this result, Plaintiff repeatedly and summarily argues that she does not rely on the Panache Contract to bring her claims. Instead, she avers her "claims arise out of her at-will employment" and that she "is not seeking the benefits of the Panache Contract, and cannot be bound to the arbitration agreement contained therein." *See* Resp. Opp'n at 19. Essentially, Plaintiff urges the Court to ignore the Panache Contract and, instead, assess whether Plaintiff was

Defendant's employee, practically.[4]  However, Plaintiff does not cite any caselaw that would permit the Court to reframe the relationship between Plaintiff and Defendant in this way.  Plaintiff only cites to cases analyzing the employer-employee relationship where the employee *personally* executed an independent contractor agreement with her employer.  *See* Resp. Opp'n at 12 (citing *Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 521 (1926); *NLRB v. United Ins. Co.*, 390 U.S. 254, 258 (1968)).  This ignores the fact that Plaintiff was hired by Defendant pursuant to an independent contractor agreement *not* between Plaintiff and Defendant, but between Defendant and Plaintiff's *business*.  This degree of separation is critical and thus Plaintiff's caselaw is inapposite.  Consequently, Counts I and II of Plaintiff's Amended Complaint, which Plaintiff advances individually, fail to state a claim under § 1981.

### (b) Panache Fitness is a party to the Panache Contract and, therefore, Count III states a claim under § 1981.

Count III of Plaintiff's Amended Complaint alleges that Defendant retaliated against Panache Fitness by terminating the Panache Contract after Plaintiff complained of Defendant's discriminatory behavior.  *See* Am. Compl. ¶¶ 68–76.  Initially, the Court denies Defendant's Motion to Dismiss as to Count III because Defendant does not advance any argument as to why Panache Fitness cannot bring a § 1981 claim for retaliation.  *See generally* Mot. Dismiss.  In fact, by Defendant's own admission and pursuant to the Panache Contract, Panache Fitness had a contractual relationship with Defendant.  *See* Mot. Dismiss at 10; Def.'s Mot. Dismiss, Ex. A.  Thus, Defendant's blanket argument that Plaintiff is not a party to the Panache Contract is inapplicable to Count III.  Indeed, the first time Defendant raises *any* substantive argument

---

[4] Notably, the plain terms of the Panache Contract provide that any employee or agent of Panache Fitness cannot be deemed an employee of Defendant: "[n]either Independent Contractor nor any agent or employee of Independent Contractor shall be deemed to be an agent, employee, partner or joint venture of Club. Independent Contractor acknowledges that he/she has absolutely no authority to represent, contract on behalf of, or obligate the Club in any way." *See* Mot. Dismiss, Ex. A at ¶1.

regarding Count III is in its Reply.  *See* Reply at 6–7.  Even then, Defendant does not meaningfully engage with Count III, but simply reiterates that Plaintiff does not personally have any contractual rights under the Panache Contract.  *Id.*

Moreover, to adequately state a claim for retaliation under 42 U.S.C. § 1981, a plaintiff must show that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  *Tucker v. Talladega City Schools*, 171 F. App'x 289, 296 (11th Cir. 2006).  Here, while Count III is not artfully pled, Plaintiff appears to allege sufficient facts to illustrate that (1) Plaintiff, as an employee of Panache Fitness, engaged in a statutorily protected activity when she complained about the diversion of clients and withholding wages from Panache Fitness based on Defendant's discrimination against Plaintiff, Am. Compl. ¶¶ 23–33; (2) Defendant terminated the Panache Contract and fired Panache Fitness, *id.* at ¶ 38; and (3) Defendant took these actions against Panache Fitness because of Plaintiff's complaints.  *See* Am. Compl. ¶¶ 30–34; 69–72.  These allegations, taken as true and in the light most favorable to Plaintiff, are sufficient to state a claim—especially in the absence of any argument to the contrary by Defendant.  Therefore, Defendant's Motion to Dismiss is denied as to Count III.

> ### (c) The Motion to Dismiss is denied as to Count IV of the Amended Complaint because Defendant's argument is waived.

Defendant does not meaningfully address Count IV of Plaintiff's Amended Complaint until its Reply.[5]  *See* Reply at 7.  And, where a party raises an argument for the first time in its reply, the court need not consider the argument.  S.D. Fla. L.R. 7.1(c) (providing that a reply

---

[5]  The extent of Defendant's discussion of Count IV is as follows: "While Count IV may not expressly depend on the termination of the Agreement, necessarily, Count IV depends on Plaintiff's relationship with Fisher Island, which does not exist outside of the Agreement . . . While Plaintiff may want to categorize herself as a 'de facto' employee of Fisher Island, an express Agreement to the contrary prohibits that." *See* Mot. Dismiss at 16.

memorandum is "strictly limited to rebuttal of matters raised in the memorandum in opposition . . . ."); *Felicia v. Celebrity Cruises, Inc.*, No. 12–20477, 2012 WL 6869829, at *2 (S.D. Fla. Nov. 30, 2012) (rejecting attempts by the parties to raise new arguments in a reply memorandum); *Willis v. DHL Global Customer Solutions (USA), Inc.*, No. 10–62464, 2011 WL 4737909, at *3 (S.D. Fla. Oct.7, 2011) (same). Accordingly, the Motion to Dismiss is denied as to Count IV.[6]

### II. Defendant's Motion to Compel Arbitration

In the alternative to its Motion to Dismiss, Defendant includes a Motion to Compel Arbitration and urges the Court to refer to arbitration any of Plaintiff's claims that are not dismissed. *See* Mot. Dismiss at 16–20. Defendant acknowledges that, typically, a non-signatory to an arbitration agreement cannot be compelled to arbitrate her claims. Mot. Dismiss at 18. Nevertheless, Defendant maintains that Plaintiff should be bound by the arbitration clause in the Panache Contract due to equitable estoppel. *Id.* Essentially, Defendant argues that Plaintiff seeks the benefit of lost wages under the Panache Contract as part of her Amended Complaint and, therefore, Plaintiff should be estopped from avoiding the burden of arbitration required by the Panache Contract. *Id.* at 18–19. Plaintiff responds that her claims do not arise out of the Panache Contract, but rather stem from "her at-will employment. Thus, [Plaintiff] is not seeking the benefits of the Panache Contract, and cannot be bound to the arbitration agreement contained therein." Resp. Opp'n at 18. Moreover, while somewhat unclear, Plaintiff appears to argue that the Panache

---

[6] Notably, as *Keith v. Agrella* explains, "the Eleventh Circuit has not addressed whether a plaintiff can state a viable claim under the equal benefits clause of § 1981." No. 1:22-CV-418-ECM, 2024 WL 1349016, at *7 n.11 (M.D. Ala. Mar. 29, 2024). However, as *Keith* persuasively points out, the Eleventh Circuit has observed that "[t]o state a claim under § 1981, a plaintiff must identify an impaired contractual relationship . . . under which the plaintiff has rights." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 890 (11th Cir. 2007) (quoting *Domino's Pizza*, 546 U.S. at 476); *see also Keith*, 2024 WL 1349016, at *8. But given Defendant's failure to properly frame this argument in its Motion to Dismiss, the Court will not consider it at this juncture.

Contract's arbitration clause is rendered unenforceable by a separate, allegedly impermissible limitation of remedies clause. *Id.* at 19–20. In reply, Defendant argues that the arbitration clause delegates such questions to the arbitrator, and thus this Court should simply refer the matter to arbitration. *See* Reply at 8–9.

Initially, there is a strong presumption in favor of referring matters to arbitration. *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1356 (S.D. Fla. 2020) ("Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration."). Determining a party's right to arbitration is a three-step inquiry as to whether: "(1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Curbelo v. Autonation Ben. Co.*, No. 14-62736, 2015 WL 667655, at *2 (S.D. Fla. Feb. 17, 2015). Accordingly, the Court must first determine whether there is a valid arbitration agreement between the parties. Then, the Court must decide whether steps two and three of the analysis should be determined by the Court or referred to the arbitrator.

Since this Court holds that Counts I and II of the Amended Complaint warrant dismissal, the Court need not reach the issue of arbitration on those claims. *See supra* Section I(a). Accordingly, only Counts III and IV are at issue. The Court holds that the arbitration clause contained in the Panache Contract is binding only as to Panache Fitness, which is a party to the Panache Contract. Therefore, the Motion to Compel Arbitration is granted only as to Count III of the Amended Complaint.

> **(a) *The Panache Contract's arbitration clause constitutes a binding arbitration agreement between Panache Fitness and Defendant, but not between Plaintiff and Defendant.***

"A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Olsher Metals Corp. v. Olsher*, No. 01-3212, 2003 WL 25600635, at *3 (S.D. Fla. Mar. 26, 2003) (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648

(1986)). Accordingly, a non-signatory to an arbitration contract cannot be compelled to arbitrate her claims. *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1399 (S.D. Fla. 2014). However, Florida law recognizes several exceptions to the general rule. A "non-signatory may be bound to arbitrate under certain circumstances: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Allied Pros. Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. 4th DCA 2015); *see also Amat v. Rey Pizza Corp.*, 204 F. Supp. 3d 1359, 1364–65 (S.D. Fla. 2016) ("The Eleventh Circuit recognizes that non-signatories can be bound to arbitrate under several theories arising from the common law principles of contract and agency law.").

In the instant case, Defendant's argument relies on the fifth exception, estoppel, which prevents a non-party from avoiding arbitration "if the non-signatory has received something more than an incidental or consequential benefit of the contract." *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1360 (S.D. Fla. 2020) (citing *In Kong v. Allied Pros. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014)). In support, Defendant cites *Gomez v. Allied Professionals Insurance Company*, which held that a plaintiff, who was not a party to an insurance policy, was nevertheless estopped from avoiding the policy's arbitration clause because the plaintiff sought to enforce coverage under the policy. *See Gomez*, 457 F. Supp. 3d at 1360. Based on this caselaw, Defendant argues that Plaintiff is bound by the arbitration clause in the Panache Contract because she seeks the benefit of lost wages as part of her Complaint. *See* Mot. Dismiss at 18.

However, in *Gomez*, the plaintiff claimed to be a third-party beneficiary under the insurance policy and explicitly brought his claims pursuant to the policy, despite being a non-party. *See Gomez*, 457 F. Supp. 3d at 1360. Hence, *Gomez* is factually distinct from this case. Count IV is brought by Plaintiff, individually. *See* Compl. ¶¶ 77–85. As Defendant admits, Plaintiff is not a party to the Panache Contract. Mot. Dismiss at 16 ("Here, Plaintiff lacks

contractual rights because she was not a party to the Agreement on which her Section 1981 claims are based."). Moreover, unlike the plaintiff in *Gomez* and regardless of the merits of her argument, Plaintiff repeatedly argues that her claims do not stem from the Panache Contract but rather from "her at-will employment." Resp. Opp'n at 19. Therefore, Defendant fails to illustrate that Plaintiff is either a signatory to the arbitration agreement or that Plaintiff should be estopped from avoiding the arbitration agreement because she seeks the benefit of the Panache Contract. Accordingly, this Court finds that there is no valid arbitration agreement between Plaintiff and Defendant, no exception applies, and denies the Motion to Compel as to Count IV.

By contrast, Count III alleges that Defendant impermissibly retaliated against Panache Fitness, a signatory to the Panache Contract containing the arbitration provision. *See* Compl. ¶¶ 68–76. The parties do not dispute that Panache Fitness and Defendant executed the Panache Contract, which includes the arbitration clause. *See* Compl. ¶ 16; Mot. Dismiss at 3. Plaintiff does not allege that Panache Fitness executed the Panache Contract under duress or as a result of fraud. *See generally* Compl. Moreover, the arbitration provision is clear and unequivocal. Mot. Dismiss, Ex. A at ¶ 22. As such, there exists a valid, written arbitration agreement between Panache Fitness and Defendant. Since there is a binding arbitration agreement between Defendant and Panache Fitness, the Court must now consider whether to refer all remaining questions regarding the arbitrability of Count III to the arbitrator.

> **(b) The Court finds that Count III of the Amended Complaint and all remaining questions of arbitrability shall be referred to the arbitrator and, therefore, grants Defendant's Motion to Compel Arbitration as to Count III only.**

Once a court determines that there is a valid arbitration agreement, it must then discern whether an arbitrable issue exists and whether the right to arbitration has been waived. *Curbelo*, 2015 WL 667655, at *2. Here, Plaintiff urges the Court to analyze whether the Panache Contract's separate limitation of remedies clause precludes arbitration. Resp. Opp'n at 19–20. Defendant

argues that the arbitration clause delegates all such questions to the arbitrator, and thus the Court should simply refer the matter to arbitration. *See* Reply at 8–9. The Court agrees with Defendant.

While a court decides whether the parties agreed to arbitration and the validity of the agreement, *AT&T Technologies, Inc.*, 475 U.S. at 649, the "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Mendez v. T-Mobile USA, Inc.*, No. 21-23545, 2022 WL 22628806, at *3 (S.D. Fla. Jan. 10, 2022) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Moreover, this "clear and unmistakable" evidence of delegation is as simple as stating that the parties agree to arbitrate pursuant to the American Arbitration Association's ("AAA"), Consumer Arbitration Rules.[7] *See, e.g.*, *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (holding that "[b]y incorporating the AAA Rules [] into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *Mendez*, 2022 WL 22628806, at *4 (holding that an arbitration clause that read "arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced" sufficiently delegated questions of arbitrability to the arbitrator).

---

[7] Pursuant to Rule 14 of the AAA's Consumer Arbitration Rules, the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." *Mendez*, 2022 WL 22628806, at *4.

Therefore, where an arbitration provision includes delegation language, any questions regarding the validity or enforceability of the arbitration agreement must be decided by the arbitrator. Here, the Panache Contract contains an arbitration clause that reads: "Any dispute or controversy arising out of or in connection with this Agreement shall be settled exclusively by binding arbitration in accordance with the rules of the American Arbitration Association." Mot. Dismiss, Ex. A at ¶ 22. By referencing the AAA Rules, the Panache Contract effectively delegates questions beyond *whether* there is an arbitration agreement to the arbitrator. *See Terminix Int'l Co., LP*, 432 F.3d at 1332; *Mendez*, 2022 WL 22628806, at *4. Accordingly, the Court grants the Motion to Compel Arbitration as to Count III of the Amended Complaint. The arbitrator shall determine not only threshold questions of whether Count III is arbitrable but also whether the right to arbitration has been waived.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion to Compel Arbitration and Stay the Action, [ECF No. 23], is **GRANTED IN PART AND DENIED IN PART**. The Court grants the Motion to Dismiss as to Counts I and II of the Amended Complaint. However, the Court denies the Motion to Dismiss as to Counts III and IV. Further, the Court grants the Motion to Compel Arbitration only as to Count III of the Amended Complaint. Accordingly, Count III of the Amended Complaint is referred to arbitration, but Defendant shall file an answer to Count IV of Plaintiff's Amended Complaint, [ECF No. 21], within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 9th day of January, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**