UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22350-RAR

**SHEBAH T. CARFAGNA**,

    Plaintiff,

v.

**FISHER ISLAND CLUB, INC.**,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant's, Fisher Island Club, Inc., Motion for Summary Judgment as to Count IV of the Amended Complaint ("Motion"), [ECF No. 46]. The gravamen of this dispute is whether Plaintiff, Shebah T. Carfagna, who is not in contractual privity with Defendant, may nevertheless bring an equal-benefit-clause claim under 28 U.S.C. § 1981. Having considered the Motion, Plaintiff's Response in Opposition, [ECF No. 54], Defendant's Reply, [ECF No. 58], as well as the Parties' statements of material facts,[1] the record, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED** as set forth herein.

## BACKGROUND

Plaintiff is a fitness instructor and the sole owner and president of Panache Trading Company *d/b/a* Panache Fitness ("Panache Fitness"). *See* DSOMF ¶ 3; PRSOMF ¶ 38.[2]

---

[1] These include Defendant's Statement of Material Facts ("DSOMF"), [ECF No. 45]; Plaintiff's Response and Counter-Statement of Material Facts ("PRSOMF"), [ECF No. 53]; and Defendant's Reply Statement of Material Facts ("DRSOMF"), [ECF No. 57].

[2] Plaintiff's Response and Counter-Statement of Material Facts begins re-numbering the facts contained within the document as "counter-statement of material facts." *See* PRSOMF at 6. However, this renders

Defendant is an exclusive residential community. *See* DSOMF ¶¶ 1, 2; PRSOMF ¶ 1, n.2. Plaintiff taught fitness classes at Defendant's facilities pursuant to an independent contractor agreement ("Contract") between Panache Fitness and Defendant. *See* DSOMF ¶¶ 3–6; PRSOMF ¶¶ 3–6. Plaintiff, as President, signed the Contract on behalf of Panache Fitness. *See* DSOMF ¶ 8; PRSOMF ¶ 4. This litigation arises out of Defendant's termination of the Contract with Panache Fitness on April 22, 2024. DSOMF ¶ 37; PRSOMF ¶ 37. Plaintiff subsequently brought a variety of claims under 42 U.S.C. § 1981, alleging that Defendant discriminated against Plaintiff and ultimately terminated the Contract based on racial animus.[3] *See generally* Am. Compl., [ECF No. 21].

However, what began as a racial discrimination action has since devolved into a semantics dispute about statutory interpretation. Defendant previously filed a Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion to Compel Arbitration and Stay the Action ("Motion to Dismiss"), [ECF No. 23]. Essentially, the Motion to Dismiss argued that Plaintiff failed to state a claim for discrimination under § 1981 because § 1981 protects the right to make and enforce contracts and, since Plaintiff signed the Contract in her representative capacity, Plaintiff was not a party to the Contract and thus lacked statutory recourse. *See* Mot. Dismiss at 15–16. The Court agreed, dismissing Counts I and II of the Amended Complaint for race discrimination and retaliation, which Plaintiff brought in her personal capacity.[4] *See* Order Granting in Part and Den. in Part Mot. to Dismiss at 7, [ECF No. 33]. However, the Court allowed

---

references to these facts confusing and therefore the Court simply continues with the original numbering, beginning at ¶ 38, rather than referring to re-numbered facts.

[3]  Specifically, Plaintiff's claims include: race discrimination against Plaintiff, individually (Count I); retaliation against Plaintiff, individually, for engaging in a protected activity (Count II); retaliation against Panache Fitness for engaging in a protected activity (Count III); and violation of Plaintiff's rights under the equal-benefit clause of § 1981, individually (Count IV). *See generally* Am. Compl.

[4]  Count III, which is not relevant to the present Motion, was referred to arbitration. *See* Order Granting in Part and Den. in Part Mot. to Dismiss at 13–15, [ECF No. 33].

Plaintiff to proceed with Count IV of the Amended Complaint, alleging that Defendant violated Plaintiff's individual rights under the equal-benefit clause of § 1981. *Id.* at 9–10. The Court did so partly because Defendant's Motion to Dismiss did not meaningfully engage with Count IV and partly because Plaintiff identified authority, albeit from outside this District, holding that a plaintiff who is not in contractual privity with a defendant could nevertheless bring an equal-benefit-clause claim under § 1981. *Id.*

Further, at the hearing on the Motion to Dismiss, the Parties represented that Count IV, Plaintiff's sole remaining claim, poses a pure question of law. *See* [ECF No. 38]. As such, the Parties stipulated on the record that there were no issues of material fact pertaining to this issue and thus summary judgment would be appropriate. *Id.* Accordingly, the Court stayed discovery in this matter and set a summary judgment briefing schedule. *See* [ECF No. 39]. As such, the operative, undisputed facts in this matter are essentially those facts pled in the Amended Complaint and reiterated nearly verbatim in the Parties' statements of material facts, which the Court takes as true. Accordingly, the facts and arguments relevant to the disposition of Count IV, that is, whether Plaintiff may maintain an equal-benefit-clause claim under § 1981 when she is not in contractual privity with Defendant, are as follows.

Defendant's Motion for Summary Judgment argues that Plaintiff's claim fails as a matter of law for three reasons: (1) a § 1981 equal-benefit claim requires state action, but Defendant is a private entity, Mot. at 6–12; (2) § 1981 only recognizes contract claims and Plaintiff is not in contractual privity with Defendant, Mot. at 12–15; and (3) Plaintiff has not identified a specific law of which Defendant deprived her of equal benefit, Mot. at 15–18.[5] Plaintiff responds that

---

[5] Defendant also includes a public policy argument, urging the Court to deny Plaintiff's claim because it is based on "racially motivated torts," and such a claim impermissibly federalizes state tort law. Mot. at 18. In support, Defendant cites multiple cases that are inapposite, such as *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), for the broad proposition that "the Supreme Court has cautioned against federalizing state matters without clear Congressional authorization, emphasizing judicial restraint to avoid expanding federal

§ 1981 prohibits violations committed by both private and public actors. Pl.'s Resp. Opp'n at 5–13. Likewise, Plaintiff argues that the equal-benefit clause of § 1981 does not require a contractual relationship. *Id.* at 13-17. Ultimately, there is no genuine dispute that Plaintiff is not a party to the Contract between Panache Fitness and Defendant. *See* DSOMF ¶¶ 3–16; PRSOMF ¶¶ 3–16; *see also* Order Granting in Part and Den. in Part Mot. to Dismiss at 7, [ECF No. 33], (holding that pursuant to *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006), Plaintiff is not a party to the Contract). Nor do the Parties dispute that Defendant is a private actor. *See* DSOMF ¶ 1; PRSOMF ¶ 1.

Finally, Plaintiff contends that Defendant deprived her of the equal benefit of tort law and corporate law. Initially, Plaintiff alleges that Defendant and its staff engaged in a pattern of racially motivated, discriminatory behavior that amounted to "racially motivated torts, including, but not limited to, defamation of [Plaintiff], which seek to deprive [Plaintiff] of the equal protection of laws or proceedings for the security of persons and property." Am. Compl. ¶ 80. Notably, Plaintiff does not specify which torts Defendant committed other than a generic reference to defamation. The remaining factual counts do little to elaborate. For instance, Plaintiff alleges that Defendant "directed [club] members away from [Plaintiff] by instructing desk attendants and other employees to falsely inform members that she was unavailable when she was actually available." *See* DSOMF ¶ 18 (citing Am. Compl. ¶ 23); PRSOMF ¶ 18. Additionally, Plaintiff complains that Defendant "prevented [Plaintiff] from teaching certain classes by falsely claiming she was not certified to do so." *See* DSOMF ¶¶ 19, 20 (citing Am. Compl. ¶ 24); PRSOMF ¶¶ 19, 20. Further, Plaintiff contends that two of Defendant's employees "tried to harm Plaintiff's reputation . . . 'by defaming her to others and misrepresenting her skills and the popularity of her classes.'" *See* DSOMF ¶ 27

---

statutes into state-law domains." Mot. at 18. However, the Court need not wade into public policy considerations because it decides the issue on the merits.

Page 4 of 18

(citing Am. Compl. ¶ 31); PRSOMF ¶ 27.  However, Plaintiff also raises in her Response in Opposition, for the first time, that Defendant deprived her of the equal benefit of "Florida corporate law" by infringing on Plaintiff's "protectable property interest . . . namely, her right to the income she derived as the sole shareholder and employee of Panache Fitness."  Pl.'s Resp. in Opp'n at 18.  Given these undisputed facts, the Court is able to determine whether Plaintiff's claim survives as a matter of law.

## **LEGAL STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable factfinder to find for the non-moving party.  *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the mere existence of *any* factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are *material* preclude entry of summary judgment.  *Lofton v. Sec'y of Dept. of Child. and Fam. Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) (emphasis added).  "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000).  And, when the record, "taken as a whole," could not support a reasonable finding for the non-movant, there is no "genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

Moreover, at summary judgment, the moving party "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. As discussed *supra*, the Parties previously stipulated on the record that there is no genuine dispute as to any material fact and the Court may decide the remaining issue as a matter of law. Accordingly, the essential question of whether Plaintiff may bring an equal-benefit-clause claim under § 1981—despite not being in contractual privity with Defendant—is ripe for adjudication.

## **ANALYSIS**

Congress enacted § 1981 to protect certain enumerated rights for all individuals regardless of race. These include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. In 1991, Congress amended § 1981 in response to the continued deprivation of these rights, adding two new subsections for clarity. Subsection (b) defines the "make and enforce contracts" clause to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Subsection (c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c).

To state a claim under § 1981, Plaintiff must plead facts demonstrating that: (1) Plaintiff is a racial minority; (2) Defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. *Williams v. Columbus Reg' Healthcare Syst., Inc.*, 499 F. App'x 928, 929 (11th Cir. 2012). Here, Plaintiff alleges that Defendant violated her right to the "full and equal benefit of all laws and proceedings

for the security of persons and property as is enjoyed by white citizens." However, to prove a violation of § 1981's equal-benefit clause, Plaintiff must also prove racial animus, "identify a relevant law [ ] for the 'security of persons and property,'" and persuade the Court that Defendant deprived her of "the full and equal benefit" of that law. *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003).

Defendant argues that Count IV of Plaintiff's Amended Complaint, alleging a violation of § 1981's equal-benefit clause, fails as a matter of law for three reasons: (1) a § 1981 equal-benefit claim requires state action, but Defendant is a private entity; (2) § 1981 only recognizes contract claims and Plaintiff is not in contractual privity with Defendant; and (3) Plaintiff has not identified a specific law of which the Defendant deprived her of equal benefit. Apparently, this is a matter of first impression in this Circuit and there exists not only a dearth of case law in this arena but also a circuit split. However, based on the clear language of § 1981 and the available case law, the Court holds that § 1981 does not apply solely to state actors and that § 1981 does not apply only to contract claims. Nevertheless, the Court is persuaded that § 1981's equal-benefit clause requires Plaintiff to identify a specific law that protects the security of her person or property. Since Plaintiff cannot identify such a law, let alone illustrate how Defendant deprived her of the equal benefit of that law, Plaintiff fails to show that Defendant violated the enumerated right at issue and, accordingly, Plaintiff's § 1981 claim fails.

### I.  *As a matter of law, a § 1981 equal-benefit clause claim does not require state action.*

Defendant argues that Count IV fails as a matter of law because an "[e]qual [b]enefit claim requires state action; thus, purely private behavior, such as [Defendant]'s alleged conduct, does not satisfy this requirement." Motion at 5–6. In support, Defendant cites case law from the Third, Fourth, and Eighth Circuits holding that "[b]ecause the state is the sole source of the law, it is only the state that can deny the full and equal benefit of the law." *See, e.g.*, *Youngblood v. Hy-Vee Food*

*Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001); *Chapman v. Higbee Co.*, 256 F.3d 416, 421 (6th Cir. 2001), *rev'd en banc*, 319 F.3d 825 (6th Cir. 2003); *Jones v. Poindexter*, 903 F.2d 1006, 1010 (4th Cir. 1990); *Mahone v. Waddle*, 564 F.2d 1018, 1029–30 (3d Cir. 1977).

The Eleventh Circuit has not yet addressed the issue. However, "[a]s in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (internal quotation omitted). Moreover, where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation omitted). Here, Congress added subsection (c) to § 1981 in 1991 and the clear language of the statute now provides: "The rights protected by this section are protected against impairment by *nongovernmental discrimination* and impairment under color of State law." 42 U.S.C. § 1981(c) (emphasis added). Accordingly, the plain language of § 1981 following the 1991 amendment clearly encompasses private actors as well as those acting under color of state law.

Indeed, there is no question that § 1981 *generally* applies to private actors. *See, e.g.*, *Runyon v. McCrary*, 427 U.S. 160, 174–175 (1976) ("There could hardly be a clearer indication of congressional agreement with the view that § 1981 does reach private acts of racial discrimination."). Instead, Defendant grasps at a particular string of case law that isolates the "equal benefit" and "like punishment" clauses of § 1981(a) and interprets subsection (c) as applying only to the "make and enforce contracts" clause of § 1981(a). However, this case law is grounded in jurisprudence that pre-dates Congress's 1991 amendment, specifically, *Mahone v. Waddle*, 564 F.2d 1018, 1029–30 (3d Cir. 1977).

Initially, *Mahone* became the touchstone case because it distinguishes between the "make and enforce contracts" clause, where private actors are the quintessential contracting parties, and

the "equal benefit of the law" and "like punishment" clauses, which suggest the legal and punitive power of government actors. *Id.* at 1228–29. *Mahone* reasons that:

> The words "full and equal benefit of all laws and proceedings for the security of persons and property" [] suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus . . . the concept of state action is implicit in the equal benefit clause.

*Id.* at 1229. Yet, *Mahone* was decided prior to § 1981's amendment that specifically prohibits "*nongovernment* discrimination *and* impairment under color of State law." 42 U.S.C. § 1981(c) (emphasis added). Importantly, the previous version of § 1981 (which the *Mahone* Court analyzed) simply listed the enumerated rights. It follows that the *Mahone* Court needed to parse the statute's applicability without subsection (c) to guide it, but such a distinction is now moot. Accordingly, the Court finds that *Mahone*'s reasoning is now tenuous and is not persuaded by Defendant's cited cases which derive from *Mahone* and, in most instances, were also decided prior to § 1981's amendment. *See, e.g.*, *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001) (rejecting plaintiffs' equal-benefit claims because they were not raised below and "even if we were to consider them, [the] claims would fail in light of a substantial line of authority holding that only state actors can be sued under the 'full and equal benefit' clause of § 1981" (citing *Mahone*, 564 F.2d at 1029)); *Youngblood*, 266 F.3d at 855 (citing *Mahone* for the proposition that a § 1981 suit requires a state actor); *Jones*, 903 F.2d at 1010 (holding in 1990 that "[a] § 1981 'full and equal benefit' suit will not stand unless there was state action denying the plaintiff the full and equal benefit of the law); *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*, 569 F. Supp. 1344, 1353 (E.D. Va. 1983), *judgment aff'd*, 742 F.2d 1448 (4th Cir. 1984).

Moreover, it appears that the Eighth Circuit adheres to this precedent simply out of respect for *stare decisis*. Namely, the Eighth Circuit decided *Youngblood* according to *Mahone* and prior

to § 1981's amendment in 1991; as such, *Youngblood* holds that an equal-benefit clause action under § 1981 requires state action. 266 F.3d at 855. However, the Eighth Circuit has recently noted, somewhat skeptically, that "[i]t is a cardinal rule in [the Eighth Circuit] that one panel is bound by the decision of a prior panel" and "[t]hus, we are bound by *Youngblood*'s state action requirement." *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766–67 (8th Cir. 2016). Meanwhile, despite Defendant's citations, the Sixth Circuit has since reversed itself and abandoned *Mahone* following § 1981's amendment, holding instead that § 1981's equal-benefit clause does not require state action. *See Chapman v. Higbee Co.*, 319 F.3d 825, 829–30 (6th Cir. 2003) (holding that "§ 1981 is unambiguous" because "[a]ccording to subsection (c), the rights protected by [§] 1981 are 'protected against impairment by nongovernmental discrimination'"). Thus, the Sixth Circuit has joined the Second Circuit in holding that an equal-benefit clause claim under § 1981 does not require state action. *See, e.g.*, *Phillip*, 316 F.3d at 295; *Chapman*, 319 F.3d at 829–30. Both circuits compellingly criticize *Mahone* and its progeny's fundamental assumption that only state actors can deprive individuals of the equal benefit of the law. *Phillip*, 316 F.3d at 295 ("[T]he state is not the only actor that can deprive an individual of the benefit of laws or proceedings for the security of persons or property."). In sum, the Court is not persuaded by Defendant's line of cases and instead finds that, in light of the clear language of § 1981, an equal-benefit-clause claim does not require state action. Thus, Defendant is not insulated from any wrongdoing by virtue of being a private actor.

### II. Section 1981 does not apply solely to contract claims.

Defendant contends that since § 1981 explicitly protects the "right to make and enforce contracts," any § 1981 claim must be based in contract to be viable. Mot. at 12. Initially, this is facially untenable simply because § 1981 includes five other enumerated rights. *See* 42 U.S.C. § 1981(a). In support, Defendant points to the Supreme Court's decision in *Domino's Pizza, Inc.*

*v. McDonald*, which held that where a party brings a claim pursuant to the "make and enforce contracts" clause of § 1981, the party must have rights under the contract at issue. 546 U.S. 470, 476–80 (2006). It is true that *Domino's* includes sweeping language such as "[c]onsistent with our prior case law, and as required by the plain text of the statute, we hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id.* at 479–80.

However, *Domino's* solely discussed the "make and enforce contracts" clause. Moreover, nothing in the *Domino's* opinion indicates that the Supreme Court's decision operates to exclude any of the other enumerated rights—the briefing simply presented a contract issue, and the Supreme Court had no occasion to address any clauses other than those relevant to the issue at bar. Accordingly, the *Domino's* opinion controls only when a plaintiff's claim is brought pursuant to the "make and enforce contracts" clause—it does not impact every other clause in § 1981.

Defendant also cites several district court cases purportedly holding that § 1981 only applies to contract claims. However, the Court does not find these cases persuasive in this instance as they are factually inapposite, not binding, and effectively deferred the equal-benefit clause issue due to the lack of Eleventh Circuit precedent. *See Keith v. Agrella*, No. 1:22-CV-418-ECM, 2024 WL 1349016, at *8 (M.D. Ala. Mar. 29, 2024) (holding that "without caselaw from this Circuit supporting Keith's argument," Keith's false arrest claims fall within the "equal benefit" clause rather than the "make and enforce contracts" clause, and thus "the Court finds that Keith has failed to allege a violation of a right protected by § 1981"); *Lapread v. Buis*, No. 8:23-CV-1385-SDM-JSS, 2024 WL 916541, at *2 (M.D. Fla. Mar. 4, 2024) (stating, without elaborating, that "even if [plaintiff] can plead facts sufficient to support a claim that some defendant violated [§] 1981, [plaintiff] must assert the claim under [§] 1983"); *Bartley v. Kim's Enter. of Orlando, Inc.*, No. 610CV1180ORL35DAB, 2010 WL 11626849, at *4–5 (M.D. Fla. Dec. 20, 2010) (dismissing the

action for failure to allege adequate facts amounting to an unlawful detention under § 1981 and § 1983); *Jones v. Flathmann*, No. CIV.A. 1:06-CV-585-W, 2008 WL 918702, at *3 n.4 (M.D. Ala. Apr. 1, 2008) (holding plaintiff's haphazard allegations that defendant's infliction of "grievous bodily harm" and "severe pain and emotional distress" violated § 1981 are more accurately construed as § 1983 claims). Accordingly, the Court finds Defendant's argument—that § 1981 applies only to contract claims—unavailing.

### III. *Plaintiff cannot establish that Defendant deprived her of the equal benefit of either Florida's tort laws or Florida's corporate laws.*

The equal-benefit clause refers to the right to the "full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). To prove a violation of § 1981's equal-benefit clause, Plaintiff must identify a relevant law that protects the "security of persons and property" and illustrate that Defendant deprived her of "the full and equal benefit" of that law based on racial animus. *Phillip*, 316 F.3d at 298. Plaintiff identifies two potential laws that Defendant allegedly deprived her the equal benefit of: Florida tort law, specifically defamation, and Florida corporate law. Defendant argues that neither Florida corporate law generally nor defamation specifically are laws that protect the "security of persons or property," but rather dissuade generalized harms, and thus Plaintiff's claim fails. Mot. at 16. The Court agrees; because Plaintiff must point to some law which protects her person or property—and since Plaintiff does not and cannot do so—her claim fails as a matter of law.

#### (a) Plaintiff fails to allege a defamation claim and thus cannot establish that Defendant deprived her of the equal benefit of Florida's tort laws.

Count IV of Plaintiff's Amended Complaint contends that Defendant committed racially motivated torts against Plaintiff, specifically defamation: "[Defendant's] actions complained of herein constitute racially motivated torts, including, but not limited to, defamation of [Plaintiff], which seek to deprive [Plaintiff] of the equal protection of laws or proceedings for the security of

persons and property." Am. Compl. ¶ 80.  Interestingly, Plaintiff does not renew this argument at summary judgment; indeed, Plaintiff's Response in Opposition does not mention a tortious act at all.  *See* Pl.'s Resp. in Opp'n at 17–19.  However, as stipulated on the record and as evidenced by the Parties' statements of undisputed facts, the Parties accept as true the allegations contained in the Amended Complaint for purposes of the Motion.  As such, the Court analyzes whether Defendant's purported defamatory comments amount to a violation of § 1981's equal-benefit clause based on the Amended Complaint's allegations.

To state a claim for defamation under Florida law, Plaintiff must plead the following elements: "(1) publication; (2) falsity; (3) [the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory." *Briseus v. JPMorgan Chase Bank, N.A.*, No. 18-80671, 2018 WL 3586140, at *3 (S.D. Fla. July 26, 2018) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  "A statement is defamatory if it 'tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, . . . exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation.'" *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) (quoting *Jews for Jesus, Inc.*, 997 So. 2d at 1109).  "Whether a statement is susceptible to defamatory interpretation is a question of law left to the Court." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020).  "'In determining the basic question of whether certain language is defamatory . . . the words used are not to be construed or taken in their mildest or most grievous sense, but . . . should be construed as the common mind would understand it.'" *Markle v. Markle*, No. 8:22-CV-511-CEH-TGW, 2023 WL 2711341, at *8 (M.D. Fla. Mar. 30, 2023) (quoting *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla. 1953)).

As it stands, the only potentially defamatory statements are: (1) Defendant "directed [club] members away from [Plaintiff] by instructing desk attendants and other employees to falsely inform members that she was unavailable when she was actually available," DSOMF ¶ 18 (citing Am. Compl. ¶ 23); PRSOMF ¶ 18; (2) Defendant "prevented [Plaintiff] from teaching certain classes by falsely claiming she was not certified to do so," DSOMF ¶¶ 19, 20 (citing Am. Compl. ¶ 24); PRSOMF ¶¶ 19, 20; and (3) "[a co-worker] falsely reported to [another co-worker] . . . [Plaintiff]'s class had only 1 attendee when, in truth, other Club members were in attendance," DSOMF ¶¶ 27, 28 (citing Am. Compl. ¶¶ 31, 32); PRSOMF ¶¶ 27, 28.

But these allegations cannot amount to defamation because they do not expose Plaintiff "to hatred, ridicule, or contempt or injure[] [her] business or reputation or occupation." *Parekh*, 820 F. App'x at 833. A reasonable listener—relying on the "common mind" and not assuming "the most grievous sense"—would not construe these statements regarding Plaintiff's availability, certification, and class attendance as defamatory. *Markle*, 2023 WL 2711341, at *8.

Moreover, whether a statement is defamatory "turns on the 'gist' of the alleged defamatory statement and the context in which that statement was made." *Bongino*, 477 F. Supp. 3d at 1317 (quoting *Jews for Jesus, Inc.*, 997 So. 2d at 1107–08 & n.12). Here, context makes it clear that the statements at issue are not defamatory in nature because they are aimed at taking away Plaintiff's clientele—not harming her personal reputation. *See, e.g.*, *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *8 n.20 (N.D. Fla. Sept. 27, 2018) (explaining that "defamation normally concerns the personal reputation of the injured party, while injurious falsehood concerns protection of the injured party's economic interests" (citing *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. 4th DCA 2002)). A review of the agreed-upon material facts, *see* DSOMF ¶¶ 17–34; PRSOMF ¶¶ 17–34, coupled with Plaintiff's allegations, *see* Am. Compl. ¶ 22, makes clear that Plaintiff's

claim consists of Defendant discriminatorily depriving her of the ability to train existing clients or obtain Fisher Island members as new clients. Defendant's actions thus fail to satisfy the elements of defamation.

Further, the second statement suffers from an additional flaw given the absence of any allegations that Defendant published the statement to a third party. To prove defamation, "[a] plaintiff must show the defendant initially published the statement." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (citing *Five for Entm't S.A. v. Rodriguez*, No. 11-24142, 2013 WL 4433420, at *6 (S.D. Fla. Aug. 15, 2013)). And the element of publication requires the "dissemination of a false statement to a person *other than* the defamed person." *Id.* (citing *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001)) (emphasis added). Here, not only does Plaintiff fail to allege that Defendant made this statement to a third party, but the Court interprets the allegation as suggesting that Defendant informed Plaintiff *herself* that she was not qualified to teach certain classes. Making an allegedly defamatory statement to the defamed person is not actionable. Accordingly, even a generous reading of Plaintiff's allegations does not amount to a defamation claim and, consequently, Plaintiff's claim that Defendant deprived her of the equal benefit of Florida's tort laws necessarily fails.

### (b) Plaintiff fails to establish a protected property interest under Florida corporate law.

Perhaps sensing the precarious nature of her defamation theory, Plaintiff contends, for the first time in her Response, that Defendant deprived her of the equal benefit of "Florida's corporation laws." Pl.'s Resp. in Opp'n at 18. More specifically, Plaintiff appears to argue that she has a "property interest" in the income she derives as the sole shareholder of Panache Fitness and, therefore, Defendant's termination of its contract with Panache Fitness adversely impacted Plaintiff by depriving her "of her rights as a shareholder to the distributions she would have received but for the discrimination." *Id.* Presumably, Plaintiff means that she has not received

dividends or distributions from Panache Fitness. However, even accepting that corporate law applies, Plaintiff cannot show that Florida's corporate laws secure her a protectable property interest—nor can Plaintiff illustrate how Defendant deprived Plaintiff of the equal benefit of Florida's corporate laws.[6]

Defendant's Motion argues that Plaintiff does not have a property interest in her continued employment and, in support, cites several cases which, though not entirely analogous, are instructive here. For instance, in *Williams v. Columbus Regional Healthcare Systems, Inc.*, the Eleventh Circuit held that a doctor's § 1981 equal-benefit-clause claim failed because "physicians do not have a broad property interest in continuing to practice medicine." 499 F. App'x 928, 929–30 (11th Cir. 2012). Likewise, in *Jimenez v. Wellstar Health Systems*, the Eleventh Circuit held that a physician with staff privileges at a hospital is not in contractual privity with that hospital and, therefore, cannot bring a § 1981 retaliation claim. 596 F.3d 1304, 1309 (11th Cir. 2010).

While distinguishable, these cases nevertheless provide a compelling parallel to the instant case.[7] Just as the physician in *Jimenez* worked at the hospital based on staff privileges rather than an employment agreement, *id.* at 1307–08, Plaintiff worked at Defendant's fitness center based on her relationship with Panache Fitness—not an employment contract with Defendant. DSOMF ¶¶ 2–6; PRSOMF ¶¶ 2–6. And, just as the Eleventh Circuit held that the physician in *Jimenez* was not in contractual privity with the hospital based on his staff privileges, *id.* at 1309–10, it is

---

[6] To the extent that Plaintiff argues that Defendant wrongfully breached the Contract with Panache Fitness and this breach negatively impacted Plaintiff, such an argument sounds in the "make and enforce contracts" clause, rather than the equal-benefit clause. And, since it is undisputed that Plaintiff is not a party to the Contract, DSOMF ¶¶ 3–16; PRSOMF ¶¶ 3–16, Plaintiff's claim would nevertheless fail under *Domino's*, 546 U.S. at 476–80. *See* Order Granting in Part and Den. in Part Mot. to Dismiss at 7, [ECF No. 33].

[7] Plaintiff's citation to *Moore v. Grady Memorial Hospital Corp.*, 834 F.3d 1168, 1173 (11th Cir. 2016) does not alter this analysis. In *Moore*, Dr. Moore's § 1981 "make and enforce contracts" claim prevailed because Dr. Moore had an employment contract with a third party, and Dr. Moore adequately alleged that the hospital's suspension of his privileges impacted his ability to complete his contractual obligations with that third party. *Id.* Plaintiff makes no such allegations here.

undisputed that Plaintiff is not a party to the Contract between Panache Fitness and Defendant. Plaintiff worked at Defendant's facilities by virtue of being the sole employee of Panache Fitness. DSOMF ¶¶ 5–9; PRSOMF ¶¶ 5–9. Moreover, the Court concurs with the Eleventh Circuit's reasoning in *Williams* and finds that Plaintiff does not have a continued right to employment, especially given that Plaintiff was not employed by Defendant nor was she terminated by Defendant. Plaintiff is the sole employee of Panache Fitness and her relationship with Defendant ended by virtue of Defendant's termination of the Contract with Panache Fitness. DSOMF ¶¶ 10, 37; PRSOMF ¶¶ 10, 37.

Plaintiff's Response in Opposition fails to rebut Defendant's arguments. Plaintiff asserts that she has a property interest in her continued employment, but this argument fails because any such right would belong to Panache Fitness under the Contract, not Plaintiff. *See* DSOMF ¶¶ 3–16; PRSOMF ¶¶ 3–16. Moreover, Florida law is clear that "an 'at-will' employee has no property right in his or her continued employment" and thus even if Plaintiff, rather than Panache Fitness, was employed by Defendant, Plaintiff still could not assert that she has a protectable property right to continue to teach classes at Defendant's facilities. *Laney v. Hosp. Bd. of Dirs. of Lee Cnty.*, No. 2:09-CV-678-FTM-29SPC, 2010 WL 5161367, at *3 (M.D. Fla. Dec. 14, 2010).

Even assuming, *arguendo*, that Plaintiff has a property interest in either distributions or income as an employee of Panache Fitness—of which she has been denied because Panache Fitness has suffered financially following the Contract's termination—again, Plaintiff is the sole employee of Panache Fitness, not Defendant. DSOMF ¶¶ 10, 37; PRSOMF ¶¶ 10, 37. Thus, any recourse would concern litigation between Plaintiff and Panache Fitness, not Plaintiff and Defendant. Plaintiff fails to cite a single case allowing a cause of action against a third party based solely on the fact that the third party's termination of the plaintiff's employer had the unfortunate effect of disrupting the plaintiff's income. *See generally* Pl.'s Resp. in Opp'n. As such, Plaintiff

fails to illustrate how Florida's corporate laws confer a protected property interest and, therefore, cannot establish that Defendant deprived her of the equal benefit of a law enacted for the protection of her person or property.

Finally, while not artfully articulated, Plaintiff seems to suggest that Panache Fitness's future business relationships were hindered by Defendant's actions. *See* Pl.'s Resp. in Opp'n at 19. However, such losses are not only insufficiently pled but also speculative and therefore not a cognizable injury. *See Jimenez*, 596 F.3d at 1310 (rejecting speculative harm to future contracts as insufficient under § 1981); *Dr. R.C. Samanta Roy Inst. of Sci. & Tech. v. J. Broad. Grp., Inc.*, No. 05-C-0423, 2005 WL 2657149, at *2 (E.D. Wis. Oct. 18, 2005) (holding that any defamatory statements that plaintiff alleges "severely and adversely affect[ed] and interfere[ed] with the [p]laintiff's business relationships . . . are not the kind of losses § 1981 is intended to protect"). Accordingly, Plaintiff can neither illustrate that Florida's corporate laws provide her with a protectable property interest, nor show that Defendant deprived her of the equal benefit of that interest.

In sum, since neither Florida tort law nor Florida corporate law provide a basis for Plaintiff's § 1981 equal-benefit-clause claim, Plaintiff's claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, [ECF No. 46], is **GRANTED**. Partial final judgment as to Count IV will be entered via separate order pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Miami, Florida, this 11th day of August, 2025.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**